STATE Ex Rel. MATZDORF Et Al. *v.* SCOTT Et Al.

No. 2875

February 28, 1930. 285 P. 511.

F. A. *Stevens,* City Attorney of Las Vegas, and *Stevens, Henderson & Noland,* for Respondents :

*A. A. Hinman,* for Relators:

## OPINION

By the Court, DUCKER, C. J.:

This is a proceeding in mandamus instituted in the lower court to compel William L. Scott, as city clerk of the city of Las Vegas, to call a special recall election in and for said city to determine whether or not J. F. Hesse, who is mayor of said city, should be recalled from office, and to compel the commissioners of the city to provide for the election. As the foregoing officers were designated as respondents in the lower court, they will be so designated in this opinion, except where referred to as such officers.

The trial court awarded judgment for relators and ordered a writ of mandate to issue directed to said respondents commanding said clerk to call such a special election and the other respondents to prepare therefor. This appeal is from the judgment, from an order overruling demurrers to an original complaint, and from an order granting relators' motion to strike portions of the answers and sustaining the general demurrers of relators to the answers. The amended complaint shows, among other matters, that, at the last election preceding the 19th day of December, 1928, fifteen hundred and eleven qualified electors voted for justice of the supreme court in said city of Las Vegas; that on the date last mentioned, four hundred and twenty-five of said qualified electors filed their petitions with said clerk demanding the recall by the people of said J. F. Hesse, as mayor of said city; that said petitions consisting of eleven copies are identical in form with the original except for the signature; that said petitions contained the residence of each signer thereto and set forth the reason in less than two hundred words why the recall was demanded;

that the original and each copy of said petition was verified by one of the signers thereof before a notary public; that the statements contained in the petitions are true; that said mayor has not offered his resignation since the filing of the petitions; and that the clerk has not called a special election, and the other officers have not provided for such an election.

The answers admit all the allegations of the amended complaint, except that it is denied that more than four hundred and nineteen of the qualified electors who voted for justice of the supreme court at the preceding election in said city filed such petitions with the clerk. As a further and separate defense it is alleged in each answer in substance that, between the 27th day of December, 1928, and the 7th day of January, 1929, both days inclusive, ninety-six of the persons who had theretofore signed said recall petitions withdrew their names therefrom, and that between the 26th day of December, 1928, and the 2d day of January, 1929, both dates inclusive, four of the persons who had theretofore signed said recall petitions, other than the ninety-six mentioned, withdrew their names therefrom. The manner in which it is claimed said withdrawals were effected is set out in detail in said answers. It is also alleged in the further and separate answers that the clerk took and made final action upon said recall petitions on the 8th day of January, 1929.

Motions to strike certain portions of the further and separate answers of respondents were granted and general demurrers thereto were sustained.

■■ Respondents contend that the recall provisions applicable to the city of Las Vegas are insufficient upon which to base a cause of action for any relief thereunder, or to give the court jurisdiction of the subject matter of the proceedings. We do not agree with this contention. The admitted allegations of the complaint gave the court such jurisdiction and were sufficient to entitle relators to the relief demanded and awarded by the court. By the provisions of section 9, article 2, of the constitution approved and ratified by the people at the

general election of 1912, every public officer of this state is made subject to recall from office by the qualified electors of the state, or the county, district, or municipality from which he is elected. See Stats. 1913, pp. 626, 627. Section 9 of the article also provides, among other things, the manner in which a recall election may be put in operation. It also provides as follows: "Such additional legislation as may aid the operation of this section shall be provided by law."

Pursuant to this section of the constitution, the legislature passed an act (Stats. 1913, c. 258) consisting of eleven sections providing for the recall of public officers. This act, so far as its provisions are applicable to the questions before us, reads:

"SECTION 1. Every public officer in the State of Nevada is subject, as in this act provided, to recall from office, by the qualified electors of the state or of the county, district or municipality from which he was elected.

"SEC. 2. For the purpose of recalling any public officer there shall be first filed with the officer with whom the petition for nomination to such office is required by law to be filed, a petition, signed by the qualified electors who voted in the state, or in the county, district or municipality electing such officer, equal in number to twenty-five per cent of the votes cast in said state, or in the county, district or municipality for the office of justice of the supreme court, at the last preceding election; said petition shall also contain the residence of the signer, and set forth in not to exceed two hundred words, the reason why said recall is demanded.

"SEC. 3. Such petition shall consist of any number of copies thereof, identical in form with the original, except for the signatures; every such copy shall be verified by at least one of the signers thereof, who shall make oath before any officer authorized by law to administer oaths, that the statements and signatures contained in the petition are true. Upon filing such petition the officer with whom the same shall be

filed, shall not sooner than ten days nor more than twenty days thereafter issue a call for a special election to be held within twenty days after the issuance of the call therefor, in the state, or in the county, district or municipality electing such officer, to determine whether the people shall recall such officer; provided, however, that if such officer shall offer his resignation within five days after the filing of the petition aforesaid, such resignation shall be accepted, and the vacancy thereby caused shall be filled in the manner provided by law; if such officer shall not resign he shall continue to perform the duties of his office until the result of said special election shall be finally declared.

\* \* \* \* \* \* \* \* \* \*

"Sec. 8. No petition for the recall of any public officer shall be circulated or filed against any such officer until he has actually held his office six months, save and except, that it may be filed against a senator or assemblyman in the legislature at any time after ten days from the beginning of the first session after his election. \* \* \*

\* \* \* \* \* \* \* \* \* \*

"Sec. 11. The general election laws of this state, so far as applicable, shall apply to all elections held under this act."

Except in some minor details, the foregoing provisions of the statute are the same as the provisions of said section 9, article 2, of the constitution. Both provide a complete method for setting in operation an election for the recall of public officers by the qualified electors of the state or political subdivision thereof mentioned. The amended complaint in this case conforms to the requirements of the statute.

A specific objection made by respondents why a recall election in this case cannot be had is that neither by any provision of the constitution nor statute has any officer been designated with whom a recall petition may be filed against an officer of the city of Las Vegas. The amended complaint alleges that the petitions were filed with the city clerk of the city of Las

Vegas. The requirements of the constitution and of the statute as to the officer with whom recall petitions shall be filed are substantially the same. The statute of 1913, as we have seen, provides in this respect that a recall petition shall be "filed with the officer with whom the petition for nomination to such office is required by law to be filed." Section 2.

While there is no specific provision of law designating the city clerk of the city of Las Vegas as the officer with whom the petition for nomination of a candidate for the office of mayor of Las Vegas shall be filed, there is a general provision which does. Section 8 of "An Act relating to elections and removals from office," approved March 31, 1913, provides in part as follows:

"All nomination papers provided for by this act shall be filed as follows: * * * 3. For city officers, in the office of the city clerk or secretary of the legislative body of such city or municipality." Stats. 1913, p. 514.

This disposes of respondents' contention in this regard; but it is also reasonably inferable from the city charter and legislation bearing upon municipal matters that the city clerk is the officer intended. There is nothing in the charter provisions or any amendments thereto to indicate that any other city officer is intended, and it would be unreasonable to assume that the legislature, having provided for the election of a mayor and city commissioners, intended there should be no officer of the city with whom a nominating petition should be filed. The act providing for the incorporation of the town of Las Vegas made the county clerk of Clark County, in which Las Vegas is situated, the officer with whom petitions for nominations for the first city election should be filed. Stats. 1911, c. 132, pp. 145–147. By this act the entire modus operandi of the first election was placed in charge of the county clerk and board of county commissioners of the county, and subsequent elections were, by the act, expressly placed under the control of the board of city commissioners. Section 3, subchapter 2, of chapter 132 of Stats. 1911, p. 148. As the city clerk is the

clerk of the board of city commissioners, it is fair to assume that it was intended that he should discharge similar duties in regard to elections as were imposed upon the county clerk in the first instance. Force is given to this conclusion by section 13 of the act, which provided for the recall of the holder of any elective office by the qualified electors of the city and designated the city clerk as the officer with whom the petition for the recall of an incumbent, and the election of his successor should be filed. It is unlikely that the legislature intended that a petition for the recall of an incumbent and the election of his successor should be filed with the clerk, and that a petition of a candidate for an office at a general election in the city should be filed with some other officer. Section 13 has been repealed, and obviously because it was deemed that the amendment to the state constitution and statute of 1913 made ample provision for the recall of public officers, including municipal officers. Stats. 1923, pp. 80–82.

By the said act of 1923 the county clerk of Clark County was made ex officio city clerk of the city of Las Vegas. This, in our opinion, is a further token of the legislative intent that the city clerk should exercise the duties in regard to elections imposed upon the county clerk by the original act of incorporation. Candidates for county offices are required to file their petitions for nomination with the county clerk, and it has been the legislative policy to impose upon city clerks duties in regard to city elections similar to those required of county clerks in elections held in counties. This policy is reflected in a new section added to the absent voters act (Stats. 1921, c. 90, as amended) by the legislature of 1925. The section reads: "Section 16. The provisions of this act are hereby extended to include all municipal elections, and whenever in this act any duty is imposed upon, or any reference made to, the county clerk in connection with general, special or primary elections, all such duties shall be performed by, and all such references shall be construed to mean, the city clerk, whenever

such duties or such references relate to municipal elections." Stats. 1925, c. 36, p. 39.

Furthermore, evidence of such a policy is found in paragraph 2 of section 35 of the general incorporation act, Rev. Laws of Nev. p. 249, whereby the city clerk is designated as an officer with whom city election returns shall be filed and who shall have charge of the same and who shall issue certificates of election to the persons entitled thereto. See, also, Stats. 1913, c. 284, p. 514, heretofore cited. For the reasons given we hold that the petitions were filed with the officer required by law.

■ It is insisted that the withdrawals from the petitions, after they were filed, of the one hundred signatures as alleged in the answers, were legally effected, which left the petitions without the required number of signers and thereby deprived the clerk of authority to call an election. We cannot agree with this view. We are aware of cases of this and analogous character recognizing the right of withdrawal from a petition after it has been filed, if exercised before final action is taken thereon by the officer or board to whom it is addressed. But these have generally been governed by provisions of law differing from our constitutional provisions providing for the recall and aiding statute. In so far as it has been held under similar provisions that a petitioner may withdraw from the petition after it has been filed, we cannot agree with the ruling. Neither the recall amendment nor the statute enacted pursuant thereto make any provision for such a contingency. They provide only for a petition with certain requirements. The clerk is given no authority to consider or determine matters outside of the petition. His discretion is limited to ascertaining if the petition on its face is such as the law requires.

Admittedly in this case petitions containing the legal requirements and signed by a sufficient number of the qualified electors of the city were filed with the clerk. As nothing further has been prescribed by the constitution or statute as a condition precedent to the calling of an election by the clerk, his power and duty to act

in conformity with the mandate of the law attached when the petitions were filed.

The correct rule as to when jurisdiction attaches under such a state of facts is stated in Seibert v. Lovell, 92 Iowa, 507, 61 N. W. 197, 199, cited and quoted from in the opinion of the lower court on this question. The court in this case said: "We hold, then, that the question of jurisdiction is to be determined from the petition as it was when filed, and without regard to the subsequent acts of the petitioners. * * * So far as affecting the jurisdiction which had already attached was concerned, the protests and remonstrances were of no effect. * * * It must be remembered that jurisdiction did not attach as of the date when the board acted, but as of the date when the *legal* petition was filed. The power to act having been conferred upon the board by virtue of a *legal* petition, it could not be impaired or taken away by the protests, remonstrances, or attempted withdrawals of some of the petitioners." (The italics are ours.)

The following cases are also in accord with our views: Beecham v. Burns, 34 Cal. App. 754, 168 P. 1058; Gerber v. Board of Com'rs., 89 Minn. 351, 94 N. W. 886; Bordwell v. Dills, 70 Ark. 175, 66 S. W. 646, 647.

We approve the reasoning of the court in Bordwell v. Dills, supra, and think that it is applicable here. The court said: "Before the filing with the clerk * * * the petition is in the power of the signers. Each signer may control his signature. It is not yet a petition in which the public is interested. * * * But when the petition has been filed. * * * The public has now become interested in it. The jurisdiction of the subject matter has now attached. In the absence of something in the statute permitting it, no individual signer, nor, indeed, all the signers, could thereafter withdraw or erase their names from the petition. * * * He who voluntarily sets on foot a proceeding for the enforcement of a salutary police regulation in any community should not be permitted to capriciously undo his work. He should not be

allowed to play fast and loose with the interests of society. The law makes no provision for protests and remonstrances, for signing and countersigning. It only provides for the petition."

So, in the case before us, no provision has been made for withdrawals, nor is there anything in the constitution or aiding statute from which such a right can be implied. The withdrawals were therefore ineffectual. This conclusion becomes more imperative by reason of the rule that an act for recall should be liberally construed with a view to promote the purpose for which it was enacted. 43 C. J. 670.

Respondents claim that section 9 of article 2 of the Constitution of the State of Nevada is wholly inoperative, for the reason that it is impossible to ascertain who voted for justice of the supreme court in the preceding election in the city of Las Vegas. For the purposes of this case we need not determine whether respondents' contention is correct or not. If correct, then respondents by their pleadings admitted the impossible. It is alleged in the amended complaint that at the last preceding election fifteen hundred and eleven qualified electors voted for justice of the supreme court in said city; and that 25 per cent of these filed their petition, etc. The demurrers to the complaint and the amended complaint admitted these allegations, and they were not denied in the answer to the amended complaint. These allegations satisfied the constitutional requirements. The amended complaint was therefore not defective in this regard. Counsel's contention that there is no allegation in the amended complaint that the vote of the electors signing the petitions was cast at an election for justice of the supreme court is supertechnical.

Mandamus is the proper remedy. The duty of the clerk to call a special election is plain, and the duty of the city commissioners to provide for such an election equally manifest. They have no discretion in the matter. Mau v. Liddle, 15 Nev. 271–275; State v. Brodigan, 44 Nev. 212, 192 P. 263.

■ The objections raised by demurrer that there was a misjoinder of parties respondents was waived when they answered. Bliss on Code Pleadings, sec. 417. All the contentions made by respondents have been considered and found to be without merit.

For the reasons given an order was heretofore made affirming the judgment and orders appealed from.