STATE Ex Rel. COOPER *v.* REESE, City Clerk.

No. 3160

July 21, 1936.                    59 P. (2d) 647.

*Douglas A. Busey,* City Attorney, for Relator:

126

*George Springmeyer,* for Respondent:

## OPINION

By the Court, COLEMAN, J.:

This is a proceeding in mandamus to compel the respondent, as city clerk of Reno, a municipal corporation existing pursuant to a special charter (Stats. 1903, p. 184, c. 102, as amended by Stats. 1905, p. 98, c. 71, and Stats. 1913, p. 380, c. 251), to procure necessary supplies to hold a special election to vote upon eight certain proposed bond issues duly authorized by ordinance enacted in conformity with the act of 1933 (Stats. 1933, p. 116, c. 95), prescribing the method for calling and holding of elections by the state, counties, municipal corporations, school, and high school districts of Nevada.

The real question in the matter, in the nude, is whether the general act of 1933 repeals by implication those provisions of the special act (the charter of Reno) providing the method of determining the question of the issuance of bonds.

We do not think it necessary to set out at length in this opinion the respective methods of holding an election under the charter and under the general act. Suffice it to say that pursuant to section 2 of article 18 of the charter of the city of Reno (Stats. 1913, p. 381, c. 251), said city may create a bonded indebtedness by the passage of an ordinance of the city council setting forth the purposes of the proposed bond issue, which shall be published. Section 3 of article 18 of said charter (Stats. 1905, p. 138, c. 71) provides that if in 20 days from the date of the first publication of the ordinance mentioned a petition signed by not less than 300 taxpayers of said city, representing not less than 10 percent of the taxable property of said city, shall be

presented to the city council praying for a special election upon the question of whether or not the proposed ordinance shall be passed, such special election shall be called to be held and conducted as nearly as possible in the same manner as are elections for city officers; at which all qualified electors who are taxpayers and who are entitled to vote at a general election, and duly registered, are entitled to vote. Under the general act it is provided that a proposal to issue bonds shall be voted upon, at which election separate ballot boxes are to be provided for the owners and the spouses of the owners of real property assessed on the assessment roll, such boxes to be designated B, and for those who are not in either of such classes, such voters' ballots to be deposited in box A. The general act also provides that the nonproperty owners shall have a ballot printed on white paper, and property owners shall vote a ballot printed on colored paper. The act further provides that if a majority of the ballots in each box is in favor of the issuance of bonds, the proposal to issue said bonds shall have carried; that if the majority of the ballots in either of said boxes is against the issuance of said bonds, the proposal to issue the same shall have failed.

It is the settled law of this state, established by a long line of decisions, that repeals by implication are not favored, and that there is a presumption against the intention to repeal unless an express repeal is declared. Some of the cases so holding are Kondas v. Washoe County Bank, 50 Nev. 181, 254 P. 1080; Thorpe v. Schooling, 7 Nev. 15, 17; In re Estate of David Walley, 11 Nev. 260; State v. Donnelly, 20 Nev. 214, 19 P. 680; State v. Trolson, 21 Nev. 419, 32 P. 930; State v. La Grave, 23 Nev. 373, 48 P. 193, 674; Nordyke v. Pastrell, 54 Nev. 98, 7 P. (2d) 598; Carson City v. Board of County Com'rs, 47 Nev. 415, 224 P. 615.

There is no express repeal by the general law of 1933. Can we say that it was the intention of the legislature to repeal the provisions of the charter of Reno relative to bond elections?

Section 1 of the act (Stats. 1933, c. 95) reads: "When used in this act the words 'municipality' or 'municipal' shall refer to a county, city or town, school district, or high school district of the State of Nevada."

Section 2 of the act reads: "Whenever the State of Nevada, or any municipality therein, proposes to issue bonds, or provide for loans, in any amount within the limit of indebtedness authorized by the constitution, the proposal for such bond issue or loan shall be submitted at a general or special election, called for that purpose, to the electors of the state or the municipality involved who are not real property owners or the spouses of real property owners, and also to the electors thereof who are the owners of real property or the spouses of real estate property owners, as shown by the assessment roll of some one or more of the counties in the state, or the spouses of such real property owners in the manner hereinafter set forth."

■ While repeals by implication are not favored, yet where an intention to repeal is clearly manifested, either by an irreconcilable repugnance between the prior and the later act, or by other means clearly indicating the legislative intent to repeal, a court will hold the later act to operate as a repeal of the former.

■ It clearly appears that there are irreconcilable repugnances between the provisions of the city charter of Reno, as to the manner of determining the question of a bond issue, and the provisions of the general act of 1933 pertaining thereto.

A bonded indebtedness of the city of Reno may be created, under its special charter, by the action of the city council alone. It is absolutely impossible for the city council, acting alone, to create an indebtedness under the general act of 1933. There must be an election in every instance, to create a bonded indebtedness under this act. This essential constitutes irreconcilable repugnance number one between the two acts.

In the situation where there must be an election under the special charter as the result of the filing of

the petition, every person who is entitled to vote at a general election, whether or not he is the owner of real property, or the spouse of such owner, but who is a taxpayer, is eligible to vote upon the proposal to issue bonds, and to have his ballot deposited in the same box as are those who own real property or who are spouses of such owners. Whereas, under the general act of 1933 this cannot be done. This difference constitutes irreconcilable repugnance number two.

Again, under the charter provisions relative to voting on the question of a bond issue, it is possible that the nonreal property owners, who vote in favor of a bond issue, may determine the result of the election, and authorize such bond issue, regardless of the vote of the real property owners and their spouses, whereas that is impossible under the general law, where the real property owners and their spouses may, by a majority vote of just one, vote against such bond issue. This is irreconcilable repugnance number three.

We are of the opinion that either of these repugnances are sufficient to justify us in holding that the special act in question, so far as it pertains to the authorization of a bond issue, is repealed by the general act of 1933.

Respondent concedes that if the general act repeals the special one, as contended by petitioner, that mandamus lies, and well may he.

We do not deem it necessary to dwell upon this question, for the reason that the ordinance of the city of Reno makes it the duty of respondent to perform the acts sought to be required of him, and section 9242 N. C. L. provides that the writ of mandamus may be issued to compel the performance of an act which the law especially enjoins as a duty resulting from an office. State v. Scott, 52 Nev. 216, 285 P. 511.

It is ordered that the peremptory writ of mandamus issue herein, as prayed.